MARK PACHOWICZ (SBN 138108)
*mark@pachowicz.com*
JENNIE HENDRICKSON (SBN 144562)
*jennie@pachowicz.com*
Law Offices of Mark Pachowicz, APLC
771 Daily Drive, Suite 230
Camarillo, CA 93010
Tel: (805) 987-4975

Attorneys for Plaintiffs,
Reanna Hermosillo, as Guardian ad Litem, et.al.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| REANNA HERMOSILLO, as Guardian ad Litem, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, et al.<br><br>Defendants. | Case No. EDCV 15-00033-DTB<br>[*Assigned to Hon. David Bristow*]<br><br>**PLAINTIFFS' MOTION RE: DAUBERT STANDARDS AND FED. R. EVID. 403 REGARDING DEFENSE EXPERT OFFICER BORDEN**<br><br>**Trial: 3.13.17** |

Plaintiffs herein offer their Motion and Memorandum of Points and Authorities to exclude the testimony of Officer James Borden, defense expert,

---

PLAINTIFFS' DAUBERT MOTION RE: JAMES BORDEN
1
Case No. EDCV 15-00033-DTB

pursuant to Federal Rules of Evidence Rules 702 and 703, and *Daubert v.Merrell Dow Pharms.*, 509 U.S. 579 (1993) and its progeny and Federal Rules of Evidence Rule 403.

## I. THE FEDERAL RULES OF EVIDENCE, RULE 702, PROVIDES SPECIFIC REQUIREMENTS AS A PREREQUSISTE FOR OFFERING EXPERT "SCIENTIFIC' TESTIMONY.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *See F.R.E. Rule 702. Borden's opinions are based upon none of the above, and plaintiffs submit he is not qualified in any respect to formulate such opinions in this matter.*

The requirement that the opinion testimony "assist the trier of fact" "goes primarily to relevance." *Daubert supra at 591.* For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is flexible. The Court must ensure the expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id., at 597. Kumho Tire Co. v Carmichael,* 526 U.S. 137, 141 (1999) holds that the *Daubert* framework applies not only to scientific testimony but to all expert testimony.

"It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential

value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion." *Mount Sinai Medical Center of Greater Miami, Inc. v. Gonzalez,* 98 So.3d 1198, 1202 (Fla. 3rd DCA 2012). For a scientific method to be reliable, there must be evidence in the record, indicating the methodology can be or has been tested. *City of Pomona v. SQM North Am. Corp,* 750 F.3d 1036, 1046 (9th Cir. 2014). This includes objective as opposed to subjective testing. (*Id.*). There is no such testing of any methodology herein.

The defense seeks to call Officer Borden, a Henderson Nevada Police Officer as an expert in this case. An expert in what is not exactly clear. From his deposition this much is known about Officer Borden's qualifications.

He is currently a police officer for Henderson Police Department. Pg. 4, L. 14-15

- He has a high school education. Pg. 47, L. 9-10.
- He has college credits but did not attend college. His college credits were obtained when he went to the Police Academy and from 18 college credits from attending classes put on by a private company owned by Dr. Lewsinsky, Force Science Institute. Pg. 47, L.19-25.
- He has no college degree. Pg. 47, L. 12.
- He is not a doctor. Pg. 115, L. 23-24.
- He is not a psychiatrist. Pg. 152, L. 4-7.
- He is not kinesiologist. Pg. 115, L. 13-14.
- He is not a biomechanical engineer. Pg. 115, L. 16-17.
- He is not a psychologist. Pg. 115. L. 21-22.

- He has never taken a psychology class. Just as part of sports psychology being taught at Force Science. Pg. 150, L. 3-10.
- He admits he has "no training other than from Force Science regarding human factors and human behavior" and his experience as a police officer "in dealing with human beings." Pg. 152-153, L. 25 to 9.
- He has never testified in federal or state court regarding human factors. Pg. 156, L. 3-10.

According to Officer Borden he is <u>not an expert</u> in the following areas:

- He is not P.O.S.T. certified in California. Pg. 40, L. 12-14.
- He is not an expert in the P.O.S.T. domains. Pg. 78, L. 4-8.
- He is not an expert in knowing what P.O.S.T. requires of officers in California and he does not know what the minimum standards are for P.O.S.T. Pg. 78, L. 9-21.
- He is not an expert in what type of weapon would penetrate a Bearcat but believes "high-power rifle" "uranium depleted" those type of things will penetrate a Bearcat. Pg. 85 - 86, L. 25-7.
- His expertise is not whether or not the deputies had a good plan or a bad plan. Pg. 98, L. 15-17.
- He is not an expert in trajectory of bullets. Pg. 125, L. 20-25.
- He did not review the tactics in this case. Pg. 60, L. 10-14.

The defense is calling a police practice expert, Kenneth Hubbs. So what exactly is Officer Borden going to testify to that is not duplicative and that he is qualified to provide an expert opinion about?

Much of his deposition was spent trying to figure that out. According to Officer Borden, he was retained "to review the case in my expertise of the use of

force." Pg. 36, L. 3-4.

Counsel, Ms. Angela Powell, took various positions during the deposition as to what he was and was not going to testify to at trial. According to Ms. Powell:

- "He's not rendering opinions about the use of a tactical tractor." Pg. 99-100, L. 23-3.
- Officer Borden was asked, "So your view is whether they shot 41, 45 times, that's not an excessive use of force. Ms. Powell stated, "He's not rendering opinions about the use of force." Pg. 128, L. 3-6.
- Later Ms. Powell argued that "his opinion takes into account whether or not the force was reasonable within the context of the human factors." Then she asserted that he's not rendering opinions solely based on tactics; only to the extent that the tactics and that use of force are coupled with human factors." Pg. 129, L. 1-16.
- Officer Borden, however, admitted to having no opinion regarding tactics that were or were not used by the team. Pg. 130, L. 2-5.
- After much back and forth between counsel Ms. Powell was asked, "Is he going to testify about that the use of force was excessive? She answered, "No." She was asked if he was going to testify that the use of force was reasonable. Her answer in part was "His opinion is not limited to whether an a vacuum the use of force is reasonable. There is an – expert that will give those opinions." Ms. Powell then asserted, "His opinion is coupled with the human factors and whether or not the use of force factors into the human factors that he reviewed from his reports." Pg. 130-131, L. 22 to 9.
- Officer Borden admitted he never read any other experts report in this case. Pg. 131, L. 16-20.  (Thus, he would be forming his own use of force

opinions rather than relying on the opinions of another expert.)

- Despite, Ms. Powell's statements Officer Borden stated, "I do have an opinion on the use of force, the number of rounds fired and the reasonableness of the officers responding to a deadly threat. And yes, that being the use of force, I have an opinion on that. So I will be giving my opinion on the use of force based on the number of rounds fired and the use of deadly force in response to the deadly threat." Pg. 132, L. 3-10.

- Ms. Powell is then asked, "You said he is not rendering an opinion on use of force. You have somebody else for that, correct? Ms. Powell answered, "Based upon policies and procedures, correct." Pg. 133, L. 2-7.

- After more discussion between counsel, Ms. Powell was asked, "Are you going to ask him for his opinion on whether the use of force was reasonable or not?" Ms. Powell answered. "No. We don't intend to elicit just that opinion from him." Pg. 134, L. 1-5.

- So I would not have to deal with the issue later, I questioned Ms. Powell on her use of the phrase "just that." I asked "Not just that. I don't care if you're going to ask him for one hundred other opinions. Are you going to ask him, whether in his opinion the use of force was reasonable yes of no?" She replied "No." Finally, she was asked, "And you're not going to ask him whether of not in his opinion the use of force was excessive or not excessive?" She answered, "No, we're not going to ask him that." Pg. 134, L. 2- 17.

Despite all of these statements, Ms. Powell later argued that Officer Borden can meld his view on the reasonableness of the shooting with his human factors experience.

Officer Borden believes he can render a number of opinions:

- He believes he is qualified to opine on Deputy Bonnet's response time to pull a trigger, although he admits he never tested him and never tested anyone from SBSD. Pg. 114-15, L. 25-12.
- When asked, Do you have any information about how long it takes Deputy Bonnet to pull a trigger, he said, "No. Just general information. The same was true for the other deputies. Pg. 120, L. 1-12.
- Officer Borden claims his "general information" came from a Force Science study where he set up GoPro cameras at the range. The videos are not available. Pg. 117-118, L. 16-12.
- That study did not use M4 weapons nor did it use rifles. Pg. 120-121, L. 22-6.
- Interestingly, the participating officers involved in the study were told the purpose of the study was to test the speed from the indexing position to pull trigger. The participants were told that the study was to collect empirical data on the time to pull the trigger. Pg. 119, L. 1-11.
- Of course participating officers knew it was being conducted by Force Science who is, according to Officer Borden, "nationally recognized" by "police departments" and "attorney firms." Pg. 159, L. 14-15 and Pg. 160, L. 11-21.
- Officer Borden wants to testify how long it would take a person to fire a gun. Pg. 196.
- Officer Borden admits his so called "opinion" is based upon a study conducted by Dr. Lewinski in 2014 that "he read the document as part of his class and now talks about it" as a paid lecturer. Pg. 200, L. 16-24.

- Officer Borden wants to testify about how long it takes a person to fall, based upon you tube videos. He does not know how many videos were analyzed or how many people were punched versus shot which caused their fall on the videos. Pg. 202.

- Officer Borden stated that he was going to testify "about the time it takes to pull a trigger, the timeline what immediate translates to in this case. The time that elapsed from the time they perceived the threat until the last shot was fired and what transpired in that time. And based on those facts and those timelines that the number of rounds fired is reasonable based on those circumstances." Pg. 138-139, L. 22 to 6.

- He wants to provide an opinion on how the officers perceived the threat. He admits he has never talked to them just read their reports. Pg. 146, L. 4-14.

Borden is not a trajectory expert, is not a physicist, is not a licensed engineer, is not a medical doctor, is not a kinesiologist, is not a reconstructionist, he is simply not an expert in human factors and his human factors opinion are not based upon science. Police departments and attorney firms that represent the police do not a scientific community make! Officer Borden has no scientific idea how long it took deputies to pull the triggers on their M4's. Nor does he have a scientific idea how long it took for Mr. Rodarte to fall to the ground because someone watched some you tube videos. His human factors opinions are based on conjecture, and supposition and nothing more than its own words, standing alone.

Q. Let me get this straight. Your opinion of what happened during that time is based on the testimony of the deputies who were there?
A. And the belt recording that depicts the actual time and the coroner's report that shows trajectory of the rounds not going through a body that was laying on the ground.

      Q. So if I have the belt recordings and I have the coroner's report, which you say you're not a doctor or have no experience in trajectory, and I have the officers, then you are providing me nothing as to what happened during that 2.04 seconds that I don't have, correct?
      A. You have everything.
      Q. And you want to provide an opinion of how the officers perceived the threat; is that true?
      A. Yes, sir.

      Pg. 146 -147 L. 15-7. See also Exhibit B, Rule 26 report Borden.

## II. BORDEN'S TESTIMONY IS NOT BASED ON ANY TESTABLE METHODOLOGY, AND WILL NOT AID THIS JURY IN DETERMINING ANY RELEVANT FACT.

      Given the audio evidence contained on the belt recordings and the statements and testimony by the Defendants, Borden's entire opinion is speculation related to the timeline of shots fired within 2.04 seconds and whether they were "reasonable" as perceived by the Defendants at the time of the shooting. The defendants can testify to that issue themselves. Borden's testimony is not helpful to any fact finder in this case in determining a fact in issue, and is simply an attempt to bolster the testimony by the Defendants and improperly tell the Court what the Defendants intended to do. Expert testimony is admissible only if it will assist the trier of fact. *Stilwell v. Smith & Nephew Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

      Borden was "trained" or received his "application learning" at the Force Science Institute, Bill Lewinski's corporation, but there is truly nothing scientific about the "institute". The Force Science News, a biweekly newsletter circulated by Lewinski's Force Science Institute, which is approved by Lewinski and in which he is frequently quoted as a supposed expert in all things police-related, demonstrates that his agenda, from his "research" to his training of officers based on that "research," is to provide officers with ways to avoid liability for any shot they fire

based on "reaction" timelines.

Officer Borden is not qualified to render human factors opinion and what he opines is not based upon science.

Under Federal Rules of Evidence Rules 702 and 703, and *Daubert v.Merrell Dow Pharms.*, 509 U.S. 579 (1993) and its progeny Officer Borden's "general information" testimony provides this jury with no scientific expert opinion whatsoever.

### III. UNDER FEDERAL RULES OF EVIDENCE, RULE 403, OFFICER BORDAN'S OPINIONS ARE A WASTE OF TIME, DUPLICATIVE.

The defense is already calling Mr. Hubbs regarding the deputies use of force. Ms. Powell stated during Officer Borden's deposition that the defense was not calling Officer Borden for his opinion regarding use of force. In addition, how can a person who has no opinion on the tactics used, the protection afforded by the Bearcat Deputy Page was in and three of the other deputies were either behind or next to render an opinion on the reasonableness of the force used.

### IV. CONCLUSION

It is respectfully requested that the Court hold a hearing on the above issues outside the presence of the jury to resolve the issues in dispute.

Respectfully submitted,

LAW OFFICES OF MARK
PACHOWICZ, APLC
By:_____
Mark Pachowicz
Jennie Hendrickson,
Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

*Reanna Hermosillo, et. al. v. County of San Bernardino, et. al.*
**USDC Case No. CV 15-00033-DTB**

I am employed in the County of Ventura, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 771 E. Daily Drive, Suite 230, Camarillo, California, 93010.

On the date shown below, I served the foregoing document described as, on the interested parties in this action as follows: **PLAINTIFF'S MOTION RE: DAUBERT STANDARDS AND FED. R. EVID. 403 RE: DEFENSE EXPERT OFFICER BORDEN**
**SEE ATTACHED SERVICE LIST**

☑ **ELECTRONIC SERVICE:** I hereby certify that on March 6, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

☑　　**FEDERAL:** I declare, under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct. I further declare that I am employed in the office of a member of this bar at whose direction service was made.

Executed March 6, 2017 at Camarillo, California.

*Cheryl D. Jones*
Cheryl D. Jones

PROOF OF SERVICE

CASE NO.:
CV 15-cv-00033-DTB

LAW OFFICE OF
MARK PACHOWICZ, APLC
771 DAILY DR, STE. 230.
CAMARILLO, CA 93012
TEL. (805) 987-4975

# SERVICE LIST

*Reanna Hermosillo, et. al. v. County of San Bernardino, et. al.*
**USDC Case No. CV 15-00033-DTB**

Eugene P. Ramirez (State Bar No. 134865)
Kayleigh McGuinness (State Bar No. 306442)
Monica M. de Leon (State Bar No. 301384)
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012

Telephone: (213) 624-6900
Facsimile: (213) 624-6999
amp@manningllp.com

*Attorneys for Defendants*


Peter Schlueter, Esq.
SCHLUETER & SCHLUETER
1916 Orange Tree Lane, Suite 450G
Redlands, California 92374

Telephone:  (909)381-4888
Facsimile:   (909)381-9238
schlueterlawoffice@yahoo.com

*Attorneys for Plaintiffs*

-2-

PROOF OF SERVICE

CASE NO:
CV 15-cv-00033-DTB

LAW OFFICE OF
MARK PACHOWICZ, APLC
771 DAILY DR, STE. 230.
CAMARILLO, CA  93012
TEL. (805) 987-4975